United States District Court
Southern District of Texas
**ENTERED**
November 19, 2019
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| AUSTIN MOTT, JR., <br> TDCJ # 01119500, <br><br> Plaintiff, <br><br> VS. <br><br> OYINKURO H. OPUTA, *et al.*, <br><br> Defendants. | § § § § § § § § § § § | CIVIL ACTION NO. 3:18-0158 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Austin Mott, Jr., an inmate at the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. Plaintiff filed this civil-rights action alleging that Defendant Oyinkuro H. Oputa assaulted him on January 19, 2018. He also alleges that other TDCJ officials violated his rights when they failed to respond properly after the incident. Plaintiff has submitted a more definite statement (Dkt. 11) as ordered by the Court.

The Court is required to scrutinize every complaint filed by a plaintiff proceeding *in forma pauperis* and must dismiss the case at any time, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Having reviewed the pleadings, the more definite statement, the applicable law, and all matters of record, the Court concludes that Plaintiff's claims must be **DISMISSED** for the reasons that follow.

## I. BACKGROUND

Plaintiff alleges that Oputa, a correctional officer, used force against him at the Terrell Unit on January 19, 2018. In particular, he states that Oputa "assaulted [him] from behind" by "physical[ly] forcing her arms around [his] wa[is]t" and by "pull[ing] [him] hard into her front side" (Dkt. 1, at 4).

In his more definite statement, Mott explains that he had an ongoing dispute with another inmate who urinated on himself and "fanned" the urine towards Mott (Dkt. 11, at 2-3). He has supplied a hand-drawn map of the dormitory, marking the location of his bunk and the other inmate's bunk (*id*. at 22 (Exhibit 1)). Mott states that in the summer of 2017, after the inmate refused to stop, he submitted an I-60 request to classification officials seeking another bunk assignment, but did not get a response. In November 2017, he submitted a Step 1 grievance but did not get a response. He states that he also made verbal requests for assistance to multiple officials, including one to Oputa on the day of the incident, but that the situation was not addressed. *See id*. at 3 (stating that he asked Oputa to "please come try and ta[lk] to this offender about this urinating situation" but that she refused).

On January 19, 2018, Mott states that he left his bunk in order to remove the other inmate's fan from where it was hanging (*id*.). At that point, Oputa approached him from behind to prevent him from removing the fan:

> I made the round to remove the offender's fan off the wall where he had it hanging fan[n]ing his urinating smell at me. Mrs. Oputa ran up behind me and forcing her arms around me to stop me from removing the fan off the wall.

(*id*. at 4). Mott claims that, right after Oputa pulled on him, his back "popped":

> Remember, [I have] a physical handicap in my left leg. I w[ear]a brace from hip to foot. And I have to w[ear] a back brace because my back go[es] out on me. And I had to use a cane to walk with. Immediately after Oputa pulled on me my lower back pop[p]ed and I stop[p]ed walking and approximate[ly] 2 minutes later I was in cuff[s] by Sgt. R. Diaz and tak[en] to segregation where I was refused medical treatment for lower back pains.

*Id*. (internal quotation marks omitted). He states that he did not fall during the incident because Oputa had her arms around his waist (*id*. at 5). In response to the Court's question about what caused Oputa to stop pulling on him, Mott stated, "When I told her to let me go because you['re] assaulting me" (*id*.). Oputa then let him go and he was cuffed and taken to lockup. Mott alleges that Oputa intentionally violated TDCJ rules that prevent an employee coming within three feet of an inmate (*id*. at 5-6).

In response to the Court's questions about injuries, Mott states that, because of the incident, he is "always in pain" and uses a walker:

> My lower back is always in pain . . . and I'm having to use a walker to walk w[ith], and I stay having bad muscle cramps in my lower back and right leg. When Mrs. Oputa pulled on me my lower back pop[p]ed.

(*id*. at 5). He states that he has received treatment for pain in his lower back and right leg since March 2018 and that, although he was not hospitalized, he is now confined to a cell bed and takes multiple medications "as a result of the assault" (*id*. at 6-7). He states that Oputa was not injured during the incident (*id*. at 7).

As a result of the incident, Mott received a disciplinary case, Case No. 20180134631, and was charged with assaulting Oputa by pushing her (*id*. at 10-11). He

had a hearing on January 29, 2018, and counsel substitute was present. He asked to call eleven witnesses, but the hearing officer denied his request. He was convicted and punished with the loss of 45 days of recreation, commissary, and telephone privileges; 45 days of cell restriction; reduction in custody level from G-2 to G-4; and removal from the craft shop (*id.* at 11, 15). He also states that he lost his craft tools (*id.* at 8-9), and that he was transferred from the Terrell Unit to the Beto Unit based on the unjustified conviction (*id.* at 11-12).

Mott filed an administrative grievance, and supplies a copy of the Step 2 grievance and response (*id.* at 6-7). He complained in the grievance that Oputa had assaulted him "when she force[d] her arms around [his] wa[is]t and pulled [him] into her front side really hard," and that other officials at the Terrell Unit had failed to investigate (*id.* at 6). At Step 1, officials denied his grievance on the grounds that the hearing records supported the guilty finding, his punishment was within guidelines, no due process errors had been identified, and the elements of the charge had been met (*id.* at 12). At Step 2, TDCJ officials again upheld the disciplinary conviction:

> A review of Disciplinary Case # 20180134631 has been conducted. The hearing records support the guilty finding. The punishment was within established guidelines and no due process errors identified. The elements of the charge were met. Only one issue will be addressed per grievance. No further action is warranted by this office.

(Dkt. 1, at 7). Mott claims that, if he had been permitted to call witnesses on his behalf, they would have testified that Oputa had assaulted him, and that he had not assaulted Oputa (Dkt. 11, at 12).

Plaintiff's complaint names three defendants whom he claims refused to investigate the alleged assault against him: Warden Mary A. King-Comstock, Captain Dale A. Watkins, and Captain Francisco J. Rodriguez (Dkt. 1, at 3). In his more definite statement, when asked to detail each defendant's personal involvement, he alleges that Warden Comstock failed to respond to his I-60 requests about the assault, which he states contained his statements sworn under penalty of perjury (Dkt. 11, at 13). He alleges that Captain Watkins refused to allow him to call witnesses at the disciplinary hearing (*id.*). He alleges that, when he complained to Captain Rodriguez about the incident, Rodriguez told Mott that it was not "up to" him and suggested that Mott write to the classification committee (*id*. at 13-14).

Finally, Plaintiff alleges that Simon Arlisa Hastings, a classification officer at the Terrell Unit, was responsible for Mott being shipped to the Beto Unit on March 15, 2018, after the incident and his disciplinary conviction (*id*. at 15, 18). He also alleges that Hastings caused him to be "segregated" at the Terrell Unit from January 19, 2018, until he was transferred to the Beto Unit on March 15, 2018 (*id*. at 17-18). He explains that Hastings reviewed his classification status after his disciplinary conviction because the conviction had changed his custody level (*id*. at 15). He further explains that she transferred him to the Beto Unit, which is a maximum-security unit, because the Terrell Unit could not accommodate his new "G4" custodial status (*id*. at 19). However, he alleges that the transfer was wrongful because he did not assault Oputa, but rather she assaulted him (*id*.).

## II. THE PLRA AND *PRO SE* PLEADINGS

Because the plaintiff is an inmate bringing suit about prison conditions, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B); *see* 42 U.S.C. § 1997e(c)(1).

In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*,

562 F.3d 674, 678 (5th Cir. 2009). It lacks an arguable basis in law "if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted). It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (internal quotation marks and citation omitted).

A dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim is governed by the same standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rogers*, 709 F.3d at 407. When considering whether the plaintiff has adequately stated a claim upon which relief can be granted, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Under this standard, the Court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal citations and quotation marks omitted). The court's review is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the Court if the documents are sufficiently referenced in the complaint and no party questions their

authenticity (citing 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004))).

### III. ANALYSIS

Mott claims that Oputa violated his Eighth Amendment right to be free of excessive force. He alleges that the other four defendants failed to properly respond to the incident with Oputa.

#### A. Eighth Amendment Claim

Mott alleges that Oputa used excessive force against him when she put her arms around his waist and pulled him hard from behind, causing his back to pop.

When a prisoner claims that a prison official's use of force violated the Eighth Amendment's ban on cruel and unusual punishments, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). The standard focuses on "the detention facility official's subjective intent to punish." *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (internal quotation marks and citation omitted). "[Not] every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. The Eighth Amendment prohibition "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal citations and quotation marks omitted). *Hudson*, applying *Whitley*, identified five factors relevant to the Court's analysis: (1) the

extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response. *Id.* at 7. Regarding injury to the inmate, the Supreme Court stated, "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id*. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id*. (quoting *Whitley*, 475 U.S. at 321).

In *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010), the Supreme Court reaffirmed *Hudson*'s holding that courts must focus on the nature of force applied, rather than a certain quantum of injury. The Court again rejected the notion that a plaintiff must show "significant injury" or "serious injury" to prevail on an Eighth Amendment claim. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*.; *see Preston v. Hicks*, 721 F. App'x 342, 345 (5th Cir. 2018) ("strain" to plaintiff's arm "falls within a *de minimus* category of force 'of a character far less intense and less calculated to produce real physical harm'") (quoting *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999)).

In this case, the Court is satisfied that, after filing his complaint and his more definite statement, Mott has pleaded his best case. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th

Cir. 2009). Taking all of Mott's allegations as true, he fails to state a claim upon which relief can be granted because he alleges only a *de minimus* use of physical force, which is "exclude[d] from constitutional recognition." *See Hudson*, 503 U.S. at 9-10. He alleges that Oputa made physical contact with him only when she placed her arms around his waist and pulled him "hard" from behind (Dkt. 1, at 3). He also states that Oputa acted in order to prevent him from removing another inmate's fan from the wall (Dkt. 11, at 4). Unreasonable or unnecessary force, inadvertence, or good-faith error by a defendant does not suffice to show an Eighth Amendment violation:

> It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley*, 475 U.S. at 319. *See Hudson*, 503 U.S. at 9 ("[Not] every malevolent touch by a prison guard gives rise to a federal cause of action"). Oputa's effort to prevent Mott from removing another inmate's property is well within the range of an officer's appropriate actions to "maintain or restore discipline." *See Hudson*, 503 U.S. at 6-7.

Moreover, Mott states Oputa stopped pulling on him when he "told her to let [him] go" (Dkt. 11, at 5), and does not allege that she used any additional force against him. The fact that Oputa tempered the severity of her contact with Mott weighs against an Eighth Amendment violation. *See Hudson*, 503 U.S. at 7 (the relationship between the need for force and the amount of force used, and the official's efforts to temper the severity of the

forceful response, are relevant factors in the Eighth Amendment analysis). Mott does not allege facts that could support a finding that Oputa acted with a "subjective intent to punish." *See Cowart*, 837 F.3d at 452.[1]

In sum, Mott does not allege facts that could establish an Eighth Amendment violation under the *Hudson* and *Whitley* standards set out above. Although he frequently uses the word "assault" to describe Oputa's actions, this conclusory allegation is insufficient to prevent dismissal of his complaint. *See Iqbal*, 556 U.S. at 678; *Rogers*, 709 F.3d at 407. The facts he alleges would, if proven at trial, demonstrate only a *de minimus* use of force that does not satisfy Eighth Amendment standards. Mott's Eighth Amendment claim against Oputa will be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Other Defendants

Plaintiff also brings claims against Comstock and Rodriguez for their alleged failure to properly respond to his complaints about the incident with Oputa and against Watkins for refusing to allow him to call witnesses at the disciplinary hearing (Dkt. 11, at 13). He also sues Hastings, a classification officer at the Terrell Unit, because, after the disciplinary conviction, he was "segregated" at the Terrell Unit and then transferred to a maximum-security unit to accommodate his new custodial status (*id*. at 15-19).

---

[1] Mott also alleges that Oputa violated TDCJ rules and procedures that prevent an employee from being within three feet of an inmate (Dkt. 11, at 5-6). However, a policy violation in itself is insufficient to show a constitutional violation. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"); *see Kitt v. Bailey*, 676 F. App'x 350, 352 (5th Cir. 2017).

Plaintiff does not allege that any of these four Defendants were involved in the incident with Oputa. Therefore, to the extent he brings Eighth Amendment claims against them, the claim fails. *See Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018) ("'Personal involvement is an essential element of a civil[-]rights cause of action,'" quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)).

To the extent Plaintiff brings claims under the Due Process Clause against Defendants for failure to investigate his allegations against Oputa, his claims fail because an inmate does not have a federal protected interest in having grievances investigated or resolved to his satisfaction. *See Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Because prison officials investigated Mott's grievance and provided "a written justification for why he was not entitled to relief," Mott fails to state a due process claim. *See Stauffer*, 741 F.3d at 587. Moreover, any due process challenge to his disciplinary conviction would properly be raised in a habeas corpus petition rather than a civil-rights complaint. *See*, *e.g.*, *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000).

Mott's allegation that Hastings adjusted his classification based on the disciplinary conviction also fails to state a claim upon which relief can be granted. Although Mott asserts that his conviction was improper and based on inaccurate information, he does not allege that Hastings was involved in his hearing or conviction, but only in his post-conviction classification. Taking all of Mott's allegations as true, Hastings merely

implemented changes in classification that were required by his disciplinary conviction and sentence. He articulates no valid basis for a civil-rights claim against Hastings.

Finally, to the extent Plaintiff seeks to hold Defendants liable due to their supervisory positions, his claim also fails. A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citations omitted). *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983"). A plaintiff seeking to establish "supervisor liability for constitutional violations committed by subordinate employees . . . must show that the supervisor acted, or failed to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446 (internal quotation marks, alterations, and citation omitted) (emphasis original). A failure-to-supervise or failure-to-train claim also requires a showing of deliberate indifference by the supervisor. *See Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446. Mott does not allege that any supervisory defendant was involved in the alleged Eighth Amendment violation by Oputa or acted with deliberate indifference to Oputa's alleged violation of his rights. *See Porter*, 659 F.3d at 446. Moreover, as stated above, Mott has failed to state an Eighth Amendment claim against Oputa.

Mott's claims against Comstock, Rodriguez, Watkins, and Hastings will be

dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. **CONCLUSION**

For the reasons stated above the Court **ORDERS** that the complaint (Dkt. 1) filed by Plaintiff Austin Mott is **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

**The Clerk will provide a copy of this order to the parties and to the Manager of the Three-Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov**.

SIGNED at Galveston, Texas, on November 19th, 2019.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE